UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THOMAS A. LAPENTER                                    CIVIL ACTION

VERSUS                                                NO: 12-1442

HARTFORD LIFE AND ACCIDENT                            SECTION: "A" (5)
INSURANCE COMPANY

### ORDER AND REASONS

Before the Court are the following motions: (1) Plaintiff's Motion for Judgment (Rec. Doc. 32), filed by Plaintiff Thomas A. LaPenter ("LaPenter"); and (2) Hartford's Motion for Summary Judgment and Other Relief (Rec. Doc. 35), filed by Defendant Hartford Life and Accident Insurance Company ("Hartford"). Both motions, scheduled for submission on February 27, 2013, are before the Court on the briefs without oral argument. By joint motion of the parties (Rec. Doc. 23) and approval of the Court (Rec. Doc. 25), this matter was submitted to the Court for final judgment based upon the administrative record and the parties' cross-motions for judgment.

For the following reasons, Plaintiff's Motion for Judgment (Rec. Doc. 32) is **GRANTED**; Hartford's Motion for Summary Judgment and Other Relief (Rec. Doc. 35) is **DENIED**.

### I.    BACKGROUND

In early 2011, Plaintiff Thomas A. LaPenter was employed by Dyncorp International LLC ("Dyncorp") as a security manager stationed in Kabul, Afghanistan. (Rec. Doc. 53 at 1). As part of LaPenter's employment agreement with Dyncorp he was afforded short-term and long-term disability insurance benefits. (*Id.*). These benefits were conveyed via a group benefits plan ("Plan") that purchased short-term and long-term disability insurance policies from Hartford. (*Id.*; Rec. Doc.

75 at 1–2; Rec. Doc. 26-2 at 79–26-2 at 96).

**I.a.    Medical History**

On or about January 11, 2011, LaPenter took a medical leave of absence from Dyncorp. (Rec. Doc. 75 at 2). Dyncorp personnel noted,  in a contemporaneously-produced report of occupational injury or disease ("OIR"), that LaPenter was experiencing "[h]ypertension refractory to current medication" caused by "[w]orkplace [s]tress" affecting his "[c]irculatory" system. (Rec. Doc. 26-2 at 12). Before LaPenter took this leave, on January 8, 2011, Dyncorp human resources employee Karla H. Micka advised LaPenter "to file an OIR and to leave country to seek medical treatment at his earliest convenience" because she was "concerned for his general well-being and d[id]n't want to have his health deteriorate to the point where MEDEVAC [wa]s required." (*Id.* at 10). LaPenter informed Hartford via affidavit that he "wasn't feeling well starting around Christmas of 2010 and progressively felt worse."  (*Id.* at 8). LaPenter described his symptoms as "stomach upset, diarrhea, respiratory congestion, and inability to sleep." (*Ibid.*).

After leaving Kabul, Afghanistan LaPenter returned to his home in Bosnia and Herzegovina where, on January 24, 2011, he was seen by Dr. Sinisa Djuricic, a neuropsychiatrist, who diagnosed LaPenter with posttraumatic stress disorder ("PTSD"). (*Id.* at 13; Rec. Doc. 53 at 1; Rec. Doc. 75 at 2). Dr. Djuricic noted that LaPenter was experiencing "problems with sleeping, increased neurosis, frustration" and "flashbacks" to a traumatic life-threatening event experienced a few months prior. (Rec. Doc. 26-2 at 13). Dr. Djuricic also noted that LaPenter felt insecure, fearful, worried for his safety, and had become reticent, cautious, more distrustful and was suffering from frequent blood pressure elevations that he was having trouble controlling. (*Ibid.*). After diagnosing LaPenter with PTSD, Dr. Djuricic prescribed him medication noting: "Control in 4–6 weeks: to 2–3 months". (*Ibid.*). Though Dr. Djuricic did not include the following observation in his contemporaneous

2

physician's report, on March 12, 2012, Dr. Djuricic provided Hartford with an "addition to medical

documentation" that stated:

> Mr. La[P]enter came to see me in my office on January 24, 2011. When I gathered all
> the information about his medical problems[,] I diagnosed him with depression within
> the post traumatic [sic] stress disorder (Dg: PTSP [sic]). I remember very well that Mr.
> La[P]enter also had other difficulties that were not in my field of specialty like
> abdominal problems, abdominal cramps and other symptoms of the gastrointestinal
> system. I did not write about these symptoms in my findings because I am a
> neuropsychiatrist but I have [sic] strongly advised Mr. La[P]enter to visit internist [sic]
> doctor.[1]

(Rec. Doc. 26-1 at 122 and 123). This medical report addendum was submitted to Hartford on

March 14, 2012. (*Ibid.*).

On January 26, 2011, two days after his visit to Dr. Djuricic, LaPenter was seen by Dr.

Milenko Krneta, a cardiologist, who diagnosed LaPenter with angina pectoris and hypertension.[2]

(Rec. Doc. 26-2 at 14 and 15). Dr. Krneta noted that LaPenter presented complaints of "spasms in

his chest, occasional palpitation[,] problems with breathing" and frequent elevations in blood

pressure. (*Ibid.*).  LaPenter indicated that he had "suffered from hypertension for fifteen years and

has been taking medications." (*Ibid.*). Additionally, Dr. Krneta noted "[d]igestion in order." (*Ibid.*).

Dr. Krneta prescribed LaPenter medication, advised that LaPenter "[s]hould be spared from psycho-

physical burdens" and concluded: "Control in 3–4 weeks: if necessary earlier. Should be spared until

control." (*Ibid.*).

On August 15, 2011, LaPenter submitted the medical records from Drs. Djuricic and Krneta

to Hartford and explained that following these visits his "health continued to deteriorate, with

symptoms pointing toward lower stomach problems." (*Id.* at 61). On March 14, 2012, LaPenter

---

[1]The Court notes that Dr. Djuricic's medical report addendum is translated from Serbian.

[2]The Court notes that Dr. Krneta's medical report is translated from Serbian.

3

presented Hartford an affidavit stating that: "From September 2010 to July 2011, I had numerous bouts of diarrhea. In May 2011 I noticed blood in my stool and made an appointment with Dr. Vaso Gotovac in Teslic, Bosnia, who recommended a colonoscopy with Dr. Dusko Panzalovic." (Rec. Doc. 26-1 at 120). On June 15, 2011, LaPenter was seen by Dr. Gotovac who noted that LaPenter was experiencing "constipation, gases and mucus in stool, once with blood, had diarrhea six months ago. Was in Afghanistan until January 2011, lost weight, takes antihypertensives."[3] (Rec. Doc. 26-2 at 16 and 17). Dr. Gotovac noted that there were "indications for total colonoscopy with anaestesia [sic]" and referred LaPenter to Dr. Panzalovic. (*Ibid.*). On June 22, 2013, LaPenter was seen by Dr. Panzolovic who performed a colonoscopy and discovered a "stenotic infiltrative vegetative tumour [sic] near the lienal flexure. . ."[4] (*Id.* at 18 and 19).  On June 26, 2011, pathological testing revealed the tumor to be a low grade adenocarcinoma.[5] (*Id.* at 20 and 21).

On July 6, 2011, LaPenter traveled back to the United States and was seen by Dr. Jay N. Yepuri, a gastroenterologist, at the Endoscopy Center at Central Park in Bedford, Texas. (*Id.* at 65–67). Dr. Yepuri's consultation notes reflect that: "Approximately 6–7 months ago, while in Afghanistan, [LaPenter] began having episodes of diffuse abdominal pain and alternating diarrhea and constipation, representing a change in bowel habits." (*Ibid.*). Dr. Yepuri reviewed LaPenter's physician and pathology reports, found that they revealed evidence and symptoms consistent with colon cancer, and ordered a battery of tests and a second colonoscopy. (*Ibid.*). On July 8, 2011 Dr. Yepuri performed a colonoscopy and confirmed the presence of a mass in LaPenter's distal descending colon.  (*Id.* at 68–70 and 22–23). This mass was biopsied and on July 11, 2011 a

---

[3]The Court notes that Dr. Gotovac's medical report is translated from Serbian.

[4]The Court notes that Dr. Panzolovic's medical report is translated from Serbian.

[5]The Court notes that this pathology report was translated from Serbian.

pathology report confirmed it to be an "infiltrating moderately differentiated adenocarcinoma." (*Id.* at 71–72). The record contains no further medical documentation related to LaPenter's colon cancer treatment but apparently shortly thereafter LaPenter underwent surgery to remove the tumor from his colon. (Rec. Doc. 75 at 3).

**I.b.   Claim History**

On August 5, 2011, LaPenter called Hartford and spoke with a telephone intake nurse.[6] (Rec. Doc. 66-1 at 23–34 and 22; Rec. Doc. 26-1 at 44–46). LaPenter explained that in early January 2011, symptoms of nausea, vomiting, diarrhea, and heart palpitations caused him to take a medical leave of absence. (*Ibid.*). LaPenter stated that he returned home to Bosnia and Herzegovina and saw a physician who, believing LaPenter's condition had a psychological origin, referred him to a psychiatrist. (*Ibid.*). After seeing the psychiatrist, LaPenter explained that he went to an internist, and then ultimately a gastroenterologist who diagnosed him with colon cancer. (*Ibid.*). After this diagnosis, LaPenter stated that he returned to the US on July 3, 2011 and underwent surgery to remove his cancer. (*Ibid.*).

LaPenter's claim was initially assigned to Hartford Ability Analyst Valeria C. Alvarado ("Alvarado") who emailed Dyncorp on August 8, 2011 to confirm LaPenter's medical leave, and to investigate the gap between LaPenter's last day of work and the assigned date of disability–which at this point Hartford considered to be July 3, 2011. (Rec. Doc. 26-1 at 43–44). Dyncorp promptly responded to Alvarado, confirming that LaPenter began his medical leave on January 11, 2011 and questioning why Hartford had assigned the July 3, 2011 date of disability. (*Id.* at 42). That same day, August 8, 2011, Alvarado called LaPenter to go over his claim and establish the date from which he

---

[6] The Court notes that the audio recordings produced by Hartford are undated, out of chronological order, and incomplete. However, having undertaken a full review of the available recordings and comparison of these recordings to the contemporaneous Hartford agent notes, the Court has been able to discern the following claim history.

would be claiming disability. (Rec. Docs. 66-1 at 13–16; 26-1 at 41–42). LaPenter reiterated that he

had been on medical leave since January 2011 with symptoms stemming from his colon cancer.

(*Ibid.*). LaPenter explained that while he was being treated for several conditions in Bosnia and

Herzegovina, the process was difficult because he did not speak the language. (*Ibid.*). LaPenter also

stated that he was having trouble finding his medical records from overseas. (*Ibid.*). Alvarado

informed LaPenter that she was going to contact LaPenter's treating physician in the U.S. to obtain

LaPenter's medical records, but that she might have trouble approving a date of disability before July

2011. (*Ibid.*). Alvarado then assigned a date of disability of July 3, 2011 in her claim notes stating that

LaPenter informed her that he was unable to obtain his medical records from overseas. (*Ibid.*).

On August 11, 2011, Alvarado called LaPenter a second time to go over his claim. (Rec.

Docs. 26-1 at 39; 66-1 at 16–22). Alvarado informed LaPenter that Hartford would assign a date of

disability on "the date [he] stopped working due to [his] condition, so that would probably be

January 11." (*Ibid.*). Alvarado recommended LaPenter get "some sort of documentation way back

from January" because "that could probably help because we have to cover that big gap." (*Ibid.*).

When LaPenter asked whether Hartford would be providing benefits from January 2011, Alvarado

stated that benefits would be provided from "whenever [LaPenter's] symptoms began" and that his

"date of disability is really January 11th, so we have to find some sort of documentation from then

to the present so that we can understand what happened." (*Ibid.*). Noting that LaPenter's disability

began more than six months prior, Alvarado informed LaPenter that she was also going to transfer

his claim to Hartford's long-term disability department. (*Ibid.*).

On August 12, 2011, Dr. Yepuri, LaPenter's treating gastroenterologist in the U.S., sent

LaPenter's medical records to Hartford. (Rec. Doc. 26-2 at 62–78). As quoted above, Dr. Yepuri

noted that: "Approximately 6–7 months ago, while in Afghanistan, [LaPenter] began having

episodes of diffuse abdominal pain and alternating diarrhea and constipation, representing a change in bowel habits." (*Id.* at 65). On August 15, 2011, LaPenter faxed in further disability documentation including the Dyncorp OIR and the treating physician notes from Drs. Djuricic, Krneta, and Yepuri. (*Id.* at 50–61). LaPenter laid out a brief chronology of the events evidencing his disability and explained that over the course of the past seven months his health had continued to deteriorate with symptoms pointing toward lower stomach problems that ultimately forced in his return to the U.S. where he was diagnosed with colon cancer requiring immediate surgery. (*Ibid.*).

On August 19, 2011, Hartford Ability Analyst William R. Faber ("Faber") called LaPenter to discuss both his short-term and long-term disability claims. (Rec. Docs. 26-1 at 17–18; 66-1 at 7–11). Faber explained that Hartford was sending paperwork for LaPenter's long-term disability claim and that after this was returned, Faber would undertake a complete review of LaPenter's file and make decisions on both the short-term and long-term disability claims. (*Ibid.*).

On August 29, 2011, LaPenter filled in and signed both a long-term disability income benefits questionnaire, and a work and educational history form that Hartford provided. (Rec. Doc. 26-1 at 1–8). This same day, August 29, 2011, Hartford sent LaPenter a letter, signed by Faber, stating that Hartford had completed its review of LaPenter's claim for short-term disability benefits and determined that LaPenter had failed to provide proof of an ongoing disability beyond April 24, 2011. (Rec. Doc. 26-1 at 60–62). Hartford stated:

> Based on the information received and reviewed, we have concluded that you were disabled due to your PTSD for the period 1/11 through 4/24/2011. Beyond this date, we have no additional medical information to support ongoing and continuous disability due to your PTSD. Also, there is no medical to support disability due to your colon cancer prior to July 2011.

(*Ibid.*).

On September 12, 2011, Hartford, through a second letter signed by Faber, denied

7

LaPenter's claim for long-term disability benefits. (Rec. Doc. 26-1 at 22–25). In this letter Hartford

stated:

> We have completed our review of your claim for benefits and have determined that your coverage terminated as of 4/25/2011, when you were found to no longer have been disabled and did not return to work. As a result of this, you were no longer an active employee with LTD coverage when you first began to receive treatment and are claiming disability due to your cancer condition. Because of this, we cannot consider your claim for Long Term Disability (LTD) benefits.

(*Ibid.*).

This same day, September 12, 2011, Hartford also sent LaPenter a denial letter signed by

Alvarado, stating that Hartford had determined that LaPenter was not covered under a Hartford

short-term disability policy for his "new" short-term disability claim. (Rec. Doc. 26-1 at 80–82). This

letter refers to a second application for short-term disability benefits, with a July 6, 2011 date of

disability in reference to LaPenter's diagnosis of colon cancer. (*Ibid.*). Despite LaPenter's consistent

description of his condition as one disabling event spanning the past several months, Hartford

denied LaPenter benefits because:

> Our records indicate that your last day of work was 01/10/2011 with a date of disability of 01/11/2011 due to Post Traumatic [sic] Stress Disorder and benefits were approved through 04/24/2011. Subsequent benefits beyond 04/24/2011 were denied as the medical information received did not illustrate a continued disability. A separate communication was sent regarding the 01/11/2011 claim.
>
> A new claim was initiated for a 07/06/2011 date of disability for colon cancer. Information received indicates you did not return to work after your 04/24/2011 prior claim approval and we received information from your employer indicating that you were on a medical Leave of Absence from 01/11/2011 through 07/12/2011. However, per the policy wording above coverage may be continued until the last day of the month following the month in which the leave of absence commenced. As your leave commenced 01/11/2011 your STD coverage ended on 02/28/2011. Unfortunately, therefore, your 07/06/2011 claim for benefits has been denied.

(*Ibid.*).

On October 11, 2011, LaPenter wrote to Hartford appealing these denials. (Rec. Doc. 26-2

at 8–26). LaPenter stated that he was still on medical leave from Dyncorp well into July 2011, when

he was eventually diagnosed with colon cancer. (*Ibid.*). LaPenter attached several medical records,

including the June 2011 treatment notes of Drs. Gotovac and Panzalovic, to his appeal letter. (*Ibid.*).

On November 8, 2011, Hartford Appeal Specialist James Early ("Early") sent LaPenter three

separate appeal denial letters. (Rec. Docs. 26-1 at 57–58; 75–77; 19–20). In the first of these, Early

explained Hartford's position that the medical documentation submitted by LaPenter was

insufficient to warrant disability benefits beyond April 24, 2011 for his initial short-term disability

claim. (Rec. Doc. 26-1 at 57–58). Early wrote:

> Your entire claim file has been reviewed in full. Review of the documentation
> in your claim file as well as that provided on appeal shows a statement from your
> physician advising of an expectation for you to remain impaired for a period of three
> months following your January 24, 2011 visit. Following that visit however, there is no
> further discussion of your condition or any notation of treatment being provided until
> you were seen on June 15, 2011. Furthermore, in your letter of appeal you do not
> discuss any impairments, symptoms or conditions preventing you from working beyond
> April 24, 2011.

(*Ibid.*).

In Early's second November 8, 2011 appeal denial letter, he addressed LaPenter's second

claim for short-term disability benefits—the July 6, 2011 date of disability claim. (Rec. Doc. 26-1 at

75–77). Early explained that:

> Documentation provided in your STD claim file indicates you were first unable
> to perform the Essential Duties of Your Occupation as a Manager – PSD US due to
> colon cancer on July 6, 2011. Your last day of work was on January 10, 2011 and you
> had filed a prior Short Term Disability claim. Following a review of your claim, it was
> determined that your coverage under the policy ceased as of April 24, 2011. As such you
> were not covered by the policy on the date you claimed Disability on July 6, 2011.

(*Ibid.*).

In the third November 8, 2011 appeal denial letter, Early addressed LaPenter's long-term

disability benefit claim. (Rec. Doc. 26-1 at 19–20). Again, Hartford determined that its prior denial

was proper. (*Ibid.*). Early explained that:

Review of your file shows that you became Disabled on January 11, 2011. According to the above definition, you must be Disabled from performing the Essential Duties of Your Occupation throughout and beyond the 180 day Elimination Period. In your case, the Elimination Period was from January 11, 2011 through July 14, 2011. Following a review of medical documentation received in support of your claim it was determined the medical evidence did not support that you remained Disabled throughout and beyond the Elimination Period and your claim was denied.

On appeal, you provided a letter discussing your medical leave from January through July 2011, discussed your initially going on leave and symptoms you were experiencing followed by a reference to worsening symptoms in June 2011 which resulted in your ultimately being diagnosed with colon cancer. Along with your letter of appeal you provided medical documentation showing treatment in January 2011, June 2011 and July 2011.

Your entire claim file has been reviewed in full. While you discuss being on a medical leave and being diagnosed with [c]olon cancer while on leave, this does not support your continued Disability or coverage under the Policy. As per the Policy, coverage continues only while you are either Disabled, or through the last day of the month following the month in which you begin your leave. As your leave began on January 11, 2011, the last day of the month following the month in which your leave began is February 28, 2011. Further, while you discuss two separate periods of Disability in your letter of appeal, there has been no medical documentation provided between January 2011 and June 2011. As such, there is no support for your inability to perform Your Occupation beyond April 24, 2011. As there is no support for Disability beyond April 24, 2011, the medical documentation does not support your continued Disability throughout and beyond the Elimination Period.

Furthermore, as you were no longer Disabled or a Full [T]ime Active Employee, your coverage under the policy ceased as of April 24, 2011. As such, you were not covered by the Policy when you were diagnosed with [c]olon cancer in June 2011.

(*Ibid.*).

On February 29, 2012, counsel for LaPenter wrote to Hartford requesting copies of LaPenter's claim file, as well as Hartford's related policies and plan documents. (Rec. Doc. 26-2 at 6). On March 14, 2012, LaPenter's counsel again wrote to Hartford enclosing the aforementioned affidavit in which LaPenter describes the progression of his illness, LaPenter's corresponding treatment documentation, and Dr. Djuricic's treatment addendum wherein Dr. Djuricic recounted the gastrointestinal symptoms LaPenter presented. (Rec. Doc. 26-1 at 119–23).

On March 19, 2012, Early responded to LaPenter's counsel explaining that because Hartford had closed LaPenter's initial claim for short-term disability benefits due to insufficient "Proof of

10

Loss to support continued Disability", the additional documentation provided by LaPenter would be

sent back to the initial claim analyst for further review. (Rec. Doc. 26-1 at 55–56). With respect to

the short-term and long-term disability benefit claims assigned the July 6, 2011 date of disability,

Early explained that Hartford's November 8, 2011 decision was final, and because Hartford

considered these claims exhausted, the additional information submitted by LaPenter would not be

reviewed in connection with them. (*Ibid.*).

On March 20, 2012, Faber wrote to LaPenter explaining that Hartford had reviewed

LaPenter's new medical information but determined that LaPenter still failed to provide sufficient

proof of loss to warrant additional benefits. (Rec. Doc. 26-1 at 51–54). After quoting language from

his August 29, 2011 denial letter, Faber provided the following analysis:

> The letter received from [sic] dated 03/12/2012 from Dr. Djuricic indicates that it was
> recommended you see an internist. However it does not indicate that you were kept out
> of work. Also it does not provide medical information indicating what was preventing
> your return to work or what the condition was that was preventing the return to work.
> There is [sic] no medical records or test results provided with this. Essentially this is an
> [sic] note which states that you were recommended to see another doctor. Based on
> what was provided we still do not have Proof of Loss.

 (*Ibid.*). Faber went on to inform LaPenter that LaPenter had the right to appeal this denial within

180 days.  (*Ibid.*).

By letter dated April 16, 2012, LaPenter, through counsel, did just that. (Rec. Doc. 26-1 at

83–86). Counsel reiterated LaPenter's position that his "disability was due to [the] colon cancer

symptoms he suffered from, beginning in early 2010." (*Ibid.*).

On May 10, 2012, Hartford Senior Appeal Specialist Marsh L. Macko ("Macko")sent counsel

for LaPenter Hartford's final denial letter. (Rec. Doc. 26-1 at 47–50). Macko stated that after a

review of LaPenter's most recent appeal, Hartford determined again that its decision to deny short-

term disability benefits beyond April 24, 2011 was correct. (*Ibid.*). Macko wrote:

To summarize, Mr. La[P]enter worked for Dyncorp International LLC as a Security Manager. Your client ceased worked [sic] activities on 01/10/11 due to post traumatic [sic] stress disorder (PTSD), uncontrolled hypertension, and angina. Retrospectively, your client also claims that he was experiencing gastrointestinal issues related to his undiagnosed condition of colon cancer which contributed to his inability to perform work activities. STD benefits were previously approved for the period of 01/14/11 through 04/24/11. However, STD benefits after 04/24/11 were denied by The Hartford on the basis that insufficient proof of loss had been provided and, the medical documentation that was submitted did not support an ongoing disability beyond that date.

The issue in dispute and under review on appeal is whether the medical findings provided support an ongoing disability beyond 04/24/11 either due to PTSD or to colon cancer.

* * *

At the conclusion of the appeal review, we find that the weight of the evidence does not substantiate that Mr. La[P]enter's medical conditions, alone or in combination, were of such severity that he was rendered Totally Disabled and unable to perform the essential duties of a Security Manager as of 04/25/11, either due to PTSD or to colon cancer.

***

Your client indicates that he was suffering from colon cancer as early as September 2010 when he started to experience frequent diarrhea. Mr. La[P]enter states that he initially attributed his bouts of diarrhea to the food in Kabul, as he had been sick multiple times from food while traveling, so he did not pay much attention to it. Your client indicates that he told his doctors in January 2011 that he had stomach cramps, diarrhea and nausea, but for whatever reason, they did not include this information in his medical chart.

Although Mr. La[P]enter claims to have had gastrointestinal symptoms beginning September 2010, there is no evidence that his symptoms were of such severity that he was rendered Totally Disabled. The 01/03/11 Report of Occupational Injury did not document the presence of any gastrointestinal symptoms. Dr. Djuricic did not include abdominal symptoms in [his] initial assessment for PTSD on 01/24/11; although [he] is noted have [sic] recalled that your client's [sic] had these complaints.

***

Mr. La[P]enter attests that he initially attributed his bouts of diarrhea to the food in Kabul. However, your client returned to his home Doboj Bosnia (BIH) in January 2011. If he continued to experience significant bouts of diarrhea, this could no longer have been attributed to food eaten while traveling after his return home. There is no medical evidence of disabling gastrointestinal symptoms in January 2011, February 2011, March 2011, April 2011 or May 2011. Your client states that he noticed blood in his stool in May 2011 and made an appointment for 06/15/11. On 06/22/2011, Mr. La[P]enter had a colonoscopy which identified a mass in his colon. This procedure diagnosed your client's condition of colon cancer which necessitated travel to the United States and additional treatment. Based on the diagnosis of colon cancer and the need for additional medical treatment, 06/22/11 is the very earliest date that a functional impairment could possibly be supported due to this condition.

However, your client's claim for STD benefits ended 04/24/11 and an ongoing

disability during the period of 04/24/11 to 06/22/11 is not supported. At no time did Mr. La[P]enter return to work activities. Because Mr. La[P]enter was no longer an active employee on 06/22/11, no STD benefits can be provided for this loss. In a letter dated 10/11/11, your client indicates that he remained on medical leave through Dyncorp "well into July 2011". Although Dyncorp may have considered Mr. La[P]enter to be on medical leave, this does not alter the provisions of the STD policy nor extend your client's STD coverage beyond 04/24/11.

In conclusion and based on the totality of the evidence presented, Appeals finds the decision to deny STD benefits after 04/24/11 to be proper and is upheld.

This will complete the appeal review. All administrative remedies offered by the Appeals process have been exhausted.

This decision is final and binding.

(*Ibid*.).

One month after receiving this final denial letter, on June 6, 2012, LaPenter filed the instant civil action against Hartford claiming an unlawful denial of benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* (Rec. Doc. 1). As mentioned above, by joint motion of the parties and approval of the Court, this matter was submitted for final judgment based upon the administrative record and the parties' cross-motions for judgment. For the following reasons, LaPenter's motion is **GRANTED** and Hartford's motion is **DENIED**.

## II.   LEGAL STANDARDS

### A. Summary Judgment Standard

The Federal Rules of Civil Procedure provide that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(a). "Summary judgment is appropriate only if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' when viewed in the light most favorable to the non-movant, 'show that there is no genuine issue as to any material fact.'" *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986)). A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Ibid.* No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. *National Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584–88, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

To withstand a properly supported motion for summary judgment, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim. *Ibid.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–23 (1986)). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Therefore, if "the factfinder could reasonably find in [the nonmoving party's] favor, then summary judgment is improper." *Kelley v. Price–Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993). Even where the Rule 56 standards are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255.

**B. ERISA Standard**

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008); *see* 29 U.S.C. § 1132(a)(1)(B). ERISA provides the federal courts jurisdiction to review benefit determinations by fiduciaries or plan administrators. *See* 29 U.S.C. § 1132(a)(1)(B). "In determining whether to pay or deny benefits, a plan administrator must make two general . . . determinations: First, he must determine the facts underlying the claim for benefits. . . . Second, he must then determine whether

14

those facts constitute a claim to be honored under the terms of the plan." *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 394 (5th Cir. 1998) (quoting *Pierre v. Conn. Gen. Life Ins. Co./Life Ins. Co. of N. Am.*, 932 F.2d 1552, 1557 (5th Cir. 1991)) (emphasis and internal quotation marks omitted). The plan administrator's initial fact determination is always reviewed for abuse of discretion. *Wade v. Hewlett–Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 537 (5th Cir. 2007), abrogated on other grounds by *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 130 S.Ct. 2149, 2157–58, 176 L.Ed.2d 998 (2010). The plan administrator's second determination, *i.e.*, interpretation of the plan, is reviewed *de novo* unless the plan "expressly confers discretion on the plan administrator to construe the plan's terms[, in which case,] the administrator's construction is reviewed for abuse of discretion." *Id.* at 537–38; *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989).

When conducting an abuse of discretion review, the Fifth Circuit applies a two-step inquiry into the plan administrator's decision. *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009). First, the court examines whether the plan administrator's decision was legally correct; and if so, there is no abuse of discretion. *Ibid.* If the court determines that the plan administrator's decision was not legally correct, it proceeds to the second step of this inquiry where it determines whether the plan administrator abused its discretion in making its decision. *Ibid.*

"A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (internal quotation marks and citation omitted). An abuse of discretion occurs "only where the plan administrator acted arbitrarily or capriciously." *Ibid.* (internal quotation marks and citation omitted). A decision is considered arbitrary when it is made "without a rational connection between the known facts and the decision or between the found facts and the

evidence." *Id.* at 246–47 (citing *Meditrust Fin. Servs. Corp. v. Sterling Chems.*, Inc., 168 F.3d 211, 215 (5th Cir. 1999)) (internal quotation marks omitted).

"This standard requires only that substantial evidence supports the plan fiduciary's decision." *Atkins v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, 694 F.3d 557, 566 (5th Cir. 2012) (citing *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir.2004)). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ibid.* (quoting *Deters v. Sec'y of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)). The court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness–even if on the low end." *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007) (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999) (*en banc*), abrogated on other grounds by *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)). "Although we generally decide abuse of discretion based upon the information known to the administrator at the time he made the decision, the administrator can abuse his discretion if he fails to obtain the necessary information." *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1015 (5th Cir. 1992).

Where an administrator has a conflict of interest, this conflict of interest is a factor to be weighed in determining an abuse of discretion. *Holland*, 576 F.3d at 247 (citing *Glenn*, 554 U.S at 115–18); *see also Schexnayder v. Hartford Life and Acc. Ins. Co.*, 600 F.3d 465, 469 (5th Cir. 2010). Because a court reviewing an administrator's decision must take into account and weigh several case-specific factors before determining whether an administrator abused his discretion, "[a]ny one factor may act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Schexnayder*, 600 F.3d

16

at 496 (quoting *Glenn*, 554 U.S at 128).

### III.   LAW AND ANALYSIS

As outlined above, LaPenter's employer Dyncorp offered an ERISA-based group benefits Plan to its employees. This Plan was funded by Hartford group policies GLT-377915 (short-term disability benefits policy) and GRH-377915 (long-term disability benefits policy) both operating with an effective date of January 1, 2008.[7] (Rec. Docs. 26-2 at 79–116; and 26-4 at 65–96). The Plan designated Hartford as the plan administrator ("Plan Administrator") (Rec. Docs. 26-2 at 110; 26-4 at 90) and the claims fiduciary (Rec. Docs. 26-2 at 112; 26-4 at 92) with "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Polic[ies]." (Rec. Docs. 26-2 at 112; 26-4 at 92).   Because the STD Plan expressly confers discretion on the Plan Administrator to construe the plan's terms, the Plan Administrator's construction can be reviewed only for an abuse of discretion by this Court. *Wade*, 493 F.3d at 537–38.

Throughout Hartford's motion, it stresses that LaPenter presented two distinct claims for benefits, *i.e.*, one claim relating to his PTSD disability, and one claim relating to his colon cancer disability. Accordingly, in support of its motion for summary judgment, Hartford argues that there are but two central issues before the Court in this matter. First, whether Hartford's decision to terminate the short-term disability benefits related to LaPenter's PTSD disability was an abuse of discretion. And Second, whether Hartford's decision to deny LaPenter's colon cancer disability claim, based on the predicate determination of a lack of coverage, was an abuse of discretion. Hartford maintains that both decisions were correct, and therefore moves the Court to affirm these determinations and dismiss LaPenter's claims with prejudice.

---

[7]The Court notes that these policies were amended effective March 1, 2011 (Rec. Doc. 26-2 at 79). Finding no relevant alteration to the policy language implicated in this action, the Court finds it unnecessary to analyze the applicability of this amendment.

Hartford asserts that its decision to terminate LaPenter's short-term PTSD disability benefits was proper because LaPenter failed "to provide Hartford with evidence of continuing disability due to PTSD". (Rec. Doc. 35-1 at 1–2). Hartford argues that the medical records LaPenter provided clearly support this finding. Hartford makes much of the fact that in Dr. Djuricic's January 24, 2011 medical consultation note, after diagnosing LaPenter with PTSD, Dr. Djuricic "noted that [LaPenter's] condition would be under control anywhere from 4–6 weeks to 2–3 months." (*Id.* at 6). Further, Hartford points out that when LaPenter was seen by the cardiologist Dr. Krneta two days later, after diagnosing LaPenter with cardiac conditions, Dr. Krneta noted "[d]igestion in order." (*Ibid.*). Hartford continues, emphasizing that "Dr. Kmeta [sic] stated that LaPenter '[s]hould be spared from psycho-social burdens' until his symptoms were under control, which the doctor estimated would take three to four weeks." (*Ibid.*). Hartford then quotes from Faber's initial denial letter that "[n]o medical was received to support a claim beyond 04/24/2011, as such further benefits for the PTSD are denied." (*Ibid.*).

Hartford builds upon this argument in support of its position that the denial of benefits relating to LaPenter's colon cancer disability was correct, because LaPenter was no longer eligible for benefits "following a leave of absence from his job taken several months before being diagnosed with colon cancer, and because [LaPenter] presented no evidence that his cancer or other gastrointestinal issues rendered him disabled during the period within which he had coverage under the Plan." (Rec. Doc. 35-1 at 2). Hartford argues that:

> Neither Plaintiff's self-reported gastrointestinal issues, the notes of Drs. Yepuri and Firstenb[e]rg[8], nor Dr. Djuricic's March 2012 letter constitutes [sic] 'substantial evidence' that Plaintiff met the definition of 'Total Disability' or 'Totally Disabled' based upon those symptoms before he began treating with Dr. V. Gotovac on June 15, 2011.

---

[8]The Court notes that Dr. Barry A. Firstenberg provided oncological management of LaPenter's colon cancer. (Rec. Doc. 26-2 at 76–78).

(*Id.* at 21). Hartford continues that:

> Plaintiff's affidavits, Dr. Djuricic's March 2012 letter and the July 2011 notes of Drs. Yepuri and Firstenb[e]rg reference gastrointestinal symptoms which pre-date the June 22, 2011 colon cancer diagnosis and fall within the Plan's January 11, 2011 through July 14, 2011 Elimination Period. However, Plaintiff sought no treatment for these symptoms prior to June 15, 2011, and he has offered no evidence that they resulted in his "Disability" as defined by the Plan, i.e., these symptoms prevented him from performing one or more of the essential duties of his occupation during the Elimination Period and beyond.

(*Id.* at 26). Hartford asserts that:

> It is undisputed that [LaPenter] did not begin treating for colon cancer until June 15, 2011 when he saw Dr. V. Gotovac. Because [LaPenter] no longer had short-term disability coverage as of April 24, 2011, Hartford's denial of short-term disability benefits based upon lack of coverage for this new disability was correct.

(*Id.* at 21). The Court finds it important to note that Hartford acknowledges that "because Hartford deemed [LaPenter] disabled from January 11, 2011 through April 24, 2011, the 'Coverage while Disabled' terms [included in the Plan] extended [LaPenter's ] short-term disability coverage through April 24, 2011, despite the fact that he was no longer an active employee[.]" (*Id.* at 20). Therefore, even under Hartford's version of events, where LaPenter presented two independent disability claims, had LaPenter become disabled by his colon cancer or its related symptoms prior to April 24, 2011, LaPenter would have been covered under the Plan and entitled to disability benefits.

LaPenter counters Hartford's arguments, pointing out that:

> In deciding that Mr. La[P]enter did not suffer from symptoms of colon cancer when he stopped working from the condition later-diagnosed as colon cancer (among his other conditions, including angina, TIA, and severe hypertension) Hartford did not provide an outside medical review, vocational review, nor did it request Mr. La[P]enter to [sic] submit an attending physician statement, as is customary in disability claims. Rather, Hartford simply chose to ignore Mr. La[P]enter's statements to Hartford and his statements to his treating physicians that verify his symptoms of colon cancer, PTSD, angina, and severe hypertension, all of which caused him to stop working in January 2011.

(Rec. Doc. 32-1 at 11–12). LaPenter continues, arguing that Hartford abused its discretion

19

"especially considering that it failed to provide its own medical review. . . ." (*Id.* at 12). Hartford acknowledges "[t]his is not a 'battle of the experts' where there are competing opinions regarding Plaintiff's ability to work between April 24, 2011, the last date by which Dr. Djuricic predicted Plaintiff's PTSD symptoms would be controlled, and his June 2011 colon cancer diagnosis." (Rec. Doc. 44 at 11). Hartford then quotes from an unpublished Fifth Circuit case, *Dramse v. Delta Family-Care Disability & Survivorship Plan*, 269 Fed. Appx. 470 (5th Cir. March 12, 2008), for the proposition that "[t]he absence of evidence supporting a claim for disability is sometimes, in and of itself, compelling proof that a claimant is not disabled." *Dramse*, 269 Fed. Appx. at 479 (citations omitted). Hartford concludes with the assertion that:

> Hartford did not 'cherry-pick' one opinion over another regarding [LaPenter]'s ability to perform one or more essential duties of his occupation, as none of the other medical records or other information contained in the administrative record include any statement indicating that [LaPenter] met the Plan's definition of 'Disabled' after April 24, 2011 for purposes of short-term or long-term disability benefits. Hartford's conclusion that [LaPenter] qualified only for short-term disability benefits and only through April 24, 2011 is supported by substantial evidence.

(Rec. Doc. 44 at 11).

A decision is considered arbitrary when it is made "without a rational connection between the known facts and the decision or between the found facts and the evidence." *Holland,* 576 F.3d at 246–47. In summary, Hartford argues that LaPenter submitted an initial claim for short-term disability benefits to cover a PTSD disability, but that the medical evidence provided did not support that he was disabled due to this condition beyond April 24, 2011. That LaPenter's disability ceased as of April 24, 2011 is a finding of fact based solely upon Hartford's interpretation of Dr. Djuricic's treatment note. This is the quintessential example of a "scintilla" of evidence being presented in support of a conclusion. Put simply, more evidence than this was needed to validate Hartford's conclusion that LaPenter's disability ceased as of April 24, 2011. Because the Court can find no

20

rational connection between this found fact—that LaPenter's disability caused by PTSD  ceased as of April 24, 2011—and the evidence—that Dr. Djuricic stated: "Control in 4–6 weeks: to 2–3 months" in his treatment note of January 24, 2011, it must find that Hartford abused its discretion in reaching this conclusion based on this evidence. (Rec. Doc. 26-2 at 13).

Hartford reasons that because LaPenter failed to return to work on April 25, 2011 and provided no additional medial evidence of a disabling condition between April 25, 2011 and June 15, 2011[9]  when he began treatment for his colon cancer, he was therefore no longer an active employee with disability benefit coverage pursuant to the relevant Plan language. The Court finds this conclusion to be an abuse of discretion as well. Even if Hartford's initial determination that LaPenter presented two independent claims of disability was reasonable based on the limited medical evidence before it at the time it made this determination—ignoring LaPenter's contrary and consistent description of one disabling condition eventually properly diagnosed as colon cancer—LaPenter subsequently provided Hartford with ample medical evidence to support his claim of disability caused by colon cancer manifesting prior to April 24, 2011. After describing the additional medical evidence presented by LaPenter in his several appeals, including the aforementioned chronology of his colon cancer symptoms, the medical addendum from Dr. Djuricic noting LaPenter's presentation of gastrointestinal complaints in January 2011, and LaPenter's gastroenterologists' descriptions of the onset of LaPenter's colon cancer symptoms prior to April 24, 2011— reported to them by LaPenter well in advance of his initial contact with

---

[9]Though under these facts it is a distinction without a difference, for the sake of clarity, the Court notes that throughout the briefs submitted by Hartford, and the underlying administrative record, Hartford has asserted that LaPenter's colon cancer disability commenced on either July 6, 2011—the date initially assigned as the date of disability for his colon cancer claim, coinciding with his colon cancer diagnosis by Dr. Yepuri—or June 15, 2011, when he was first seen by Dr. Gotovac with irrefutable gastrointestinal issues. For the purpose of this discussion the Court will consider June 15, 2011 to be the date that Hartford contends LaPenter's colon cancer disability first manifested. Hartford's arguments are not impacted by the assignment of this earlier date as it still falls well beyond the date that Hartford considers coverage under the Plan to have lapsed.

Hartford—Hartford, incredibly, asserts that "Plaintiff produced no additional medical records which reflected these earlier symptoms, a link between these symptoms and colon cancer, a diagnosis of colon cancer prior to June 2011, or an inability to perform the essential duties of his job as a result of these symptoms." (Rec. Doc. 35-1 at 11). After undertaking a thorough review of the administrative record, the Court finds the determinations by Hartford to be arbitrary and capricious and thereby an abuse of discretion.

While the Court will "generally decide abuse of discretion based upon the information known to the administrator at the time he made the decision, the administrator can abuse his discretion if he fails to obtain the necessary information." *Salley*, 966 F.2d at 1015. In the case at bar, it is undisputed that the Hartford failed to obtain an independent medical review of the medical evidence provided by LaPenter. In combination with the steadfast and unequivocal expressions from LaPenter throughout the claim process that he was disabled by symptoms related to his eventual colon cancer diagnosis, and the medical records relating to this colon cancer diagnosis that reference the onset of this condition well in advance of LaPenter's leave of absence, it was patently unreasonable of Hartford, if it had concerns about whether these medical records and LaPenter's eventual diagnosis were consistent with the disabling conditions he was suffering when he took his medical leave of absence, to not consult with LaPenter's physicians or obtain an independent medical review of the available information. Under these facts, this amounts to an obvious failure to obtain the necessary information. *See Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 832 (finding an abuse of discretion when, *inter alia*, the insurer claimed that "ample evidence" supported the denial, but that evidence was contradicted by other facts in the record); *see also Salley*, 966 F.2d at 1015 (administrator abused its discretion when it denied benefits after reviewing only records from plaintiff's first hospital admission and not her second and third admissions); *see also*

*Roig v. The Limited Long Term Disability Prog.*, 2000 WL 1146522, at *14 (E.D. La. Aug. 4, 2000)

(administrator's denial of benefits was abuse of discretion because substantial evidence did not exist

to rebut the opinion of the plaintiff's physician that the plaintiff was disabled).

> As LaPenter points out:
>
> Hartford's decision to stop short term disability benefits past April 24, 201[1] was not based on substantial evidence. Its alleged reason was because Dr. Djuricic had stated that Mr. La[P]enter's condition would be under control in three months. . . this was Hartford's biased interpretation of Dr. Djuricic's statement: 'control in two to three months,' which likely meant that Mr. La[P]enter was to be seen in two to three months.

(Rec. Doc. 41 at 6). The Court agrees. And even under the highly deferential standard that the Court

must employ in ERISA cases of this type, the Court finds that Hartford abused its discretion

because its "decision [wa]s not based on evidence, even if disputable, that clearly support[ed] the

basis for its denial." *Holland*, 576 F.3d at 246. Because Hartford rested its denial of benefits beyond

April 24, 2011 on insufficient evidence, the subsequent related determination that LaPenter was no

longer covered under the Plan when his "new" claim for disability manifested is necessarily

invalidated. Having found that Hartford's decisions were not based on substantial supporting

evidence in the administrative record, the Court finds that LaPenter is entitled to judgment in his

favor.

**IV.**     **CONCLUSION**

Hartford's decision to deny LaPenter benefits was not supported by clear, much less

substantial, evidence in the administrative record. From the start LaPenter informed Hartford that

he was unable to work due to the disabling symptoms of colon cancer he was suffering. Despite this,

from the start, Hartford ignored LaPenter's description of his disability, failed to meaningfully

address the evidence supporting his disability, and interpreted ambiguous medical records in a light

favoring denial, without bothering to consult a medical expert or request clarification from

LaPenter's treating physicians regarding his functional limitations. The Court finds that Hartford acted arbitrarily and capriciously in handling LaPenter's disability claim. This arbitrary and capricious handling amounts to an abuse of discretion in violation of ERISA.

Accordingly;

**IT IS ORDERED** that Plaintiff's Motion for Judgment (Rec. Doc. 32) is **GRANTED**. Plaintiff Thomas A. LaPenter is hereby entitled to benefits arising out of his ERISA claim;

**IT IS FURTHER ORDERED** that Hartford's Motion for Summary Judgment and Other Relief (Rec. Doc. 35) is **DENIED**.

In light of the Court's decision;

**IT IS FURTHER ORDERED** that the parties shall meet in person no later than **Monday, August 12, 2013** to discuss the exact amount due LaPenter. If no agreement is reached, a status conference with the Court shall take place in chambers on **Thursday, August 22, 2013 at 11:30 a.m.** If a compromise is entered into by the parties, counsel shall immediately notify the Court.

This 29th day of July, 2013.

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

24